**The PEOPLE of the State of Colorado, Plaintiff-Appellee,**

v.

**Robert BOULIES, Defendant-Appellant.**

**No. 86CA0456.**

Colorado Court of Appeals, Div. II.

July 30, 1987.

Rehearing Denied Sept. 3, 1987.

Certiorari Granted (Boulies) Nov. 30, 1987.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Peter J. Stapp, Asst. Atty. Gen., Denver, for plaintiff-appellee.

Donald E. Janklow, Greeley, for defendant-appellant.

SMITH, Judge.

Defendant, Robert Boulies, appeals the order of the trial court denying his motion for post-conviction relief. We affirm.

Defendant was convicted of first degree felony murder and aggravated robbery in 1972 and sentenced to consecutive terms of life imprisonment and fifty years to life, respectively. On defendant's appeal, those judgments were affirmed in *People v. Boulies*, 545 P.2d 1050 (Colo.App.1975) (not selected for official publication).

Defendant subsequently filed a motion for post-conviction relief pursuant to Crim.P. 35(c) on the grounds 1) that the alternate juror was present in the jury room during deliberations; 2) that the convictions and sentences imposed constitute double jeopardy because the offense of aggravated robbery merged into the offense of felony murder; and 3) that he was denied effective assistance of counsel, both at trial and on appeal. The trial court granted this motion solely on the basis that the alternate juror was in the jury room during deliberations.

On appeal by the People, this order was vacated and the cause was remanded for further proceedings by the supreme court in *People v. Boulies*, 690 P.2d 1253 (Colo. 1984). On remand, the trial court held an evidentiary hearing and subsequently de-

nied the motion on all grounds. This appeal followed.

## I.

Defendant first argues that the trial court erred in finding that the presence of the alternate juror in the jury room during deliberations was harmless error beyond a reasonable doubt after hearing from only six of the jurors and the alternate. We disagree.

In *People v. Boulies, supra* (Colo.1984), the court stated:

"[W]e view the presence of an alternate juror during the jury's deliberations as sufficiently impinging upon the defendant's constitutional right to a jury trial to create a presumption of prejudice that, if not rebutted, requires reversal. A defendant under the circumstances of this case is constitutionally and statutorily guaranteed a jury of twelve, Colo. Const. art. II, § 23; Crim.P. 23(a)(1), and is further guaranteed that the jury will reach its verdict in secrecy. *See Clark v. United States,* 289 U.S. 1, 13, 53 S.Ct. 465, 468–69, 77 L.Ed. 993 (1933) ..."

To give effect to this principle, the supreme court held that it is first up to the defendant to make a prima facie showing that the alternate juror was present at deliberations. The burden then shifts to the People to show by a preponderance of the evidence, that she was not present. If the trial court finds that the alternate was present, then the People may offer evidence, consistent with the limitations imposed by CRE 606, to rebut the presumption of prejudice. In order to rebut this presumption, the prosecution must produce evidence which establishes that the error was harmless beyond a reasonable doubt. *People v. Boulies, supra* (Colo.1984).

However, in *Wiser v. People,* 732 P.2d 1139 (Colo.1987), the court recognized the difficulty, once a verdict has been reached, in obtaining evidence with which to rebut a presumption of prejudice because of the rule set forth in CRE 606(b) proscribing the testimony of jurors on matters related to their mental processes during deliberations. In order to avoid this problem in cases of alleged juror misconduct, the court adopted an objective test which requires the trial court to determine whether there is a reasonable possibility that extraneous information or influence affected the verdict.

Here, the trial court instructed the alternate juror prior to the commencement of deliberations that she could go in and listen, but she could not "voice or vote," nor in any way involve herself with the deliberations. At the Crim.P. 35(c) hearing, the People stipulated to the alternate juror having been present during the jury's deliberations. Accordingly, under the procedure established in *Boulies, supra* (Colo. 1984), the burden of proving a lack of prejudice fell on the People.

The prosecution reported that, despite its best efforts, it had been able to locate only six members of the jury and the alternate. The alternate testified that she sat in the room and sometimes read a magazine, but did not say or do anything to attempt to influence the deliberations. Each of the six members of the jury testified that they were in no way influenced by the presence of the alternate. Several of them did not even remember that she had been in the room, and the remainder testified that she had not said a single word during deliberations nor done anything to inhibit or influence them in their decision.

On this evidence, the court concluded that the alternate juror's mere presence had no effect on the verdict and, accordingly, ruled that the error was harmless beyond a reasonable doubt.

Initially, we note that neither party has raised the issue, either in the trial court or on appeal, of whether the testimony presented by the jurors at the Crim.P. 35(c) hearing was proper under CRE 606(b). Therefore, we do not address that question.

It is not clear from the language used in *Wiser v. People, supra,* whether that case overrules *People v. Boulies, supra,* and adopts the objective standard to determine if an outside influence had an effect on the jury's verdict where that outside influence was not the result of the same kind of jury

misconduct as was at issue in *Wiser*. However, it is not necessary for us to decide which standard applies since the result is the same under both.

■ Here, the uncontroverted testimony shows that the alternate juror followed the instructions of the court and did not participate in any manner in the jury's deliberations. We hold that this testimony was sufficient to support the trial court's conclusion that the presumption of prejudice created by the presence of the alternate juror during deliberations had been rebutted and that the error was harmless beyond a reasonable doubt.

■ Further, using the objective standard set forth in *Wiser v. People, supra,* we hold that because the alternate juror did not participate in any way or do anything to influence the jury's deliberations, there was not a reasonable possibility that she had any effect on the verdict. Therefore, a new trial is not required.

## II.

■ Defendant next argues that the offense of aggravated robbery merges with the offense of felony murder and, therefore, his conviction and sentence for both aggravated robbery and felony murder constitutes double jeopardy in violation of both *Colo. Const.* art. II, § 18, and the Fifth Amendment. We disagree.

Defendant was charged with felony murder pursuant to C.R.S.1963, 40–2–3(1). That crime was defined as a murder "committed in the perpetration or attempt to perpetrate any arson, rape, robbery, mayhem, or burglary...." Robbery, as defined in 1967 Perm.Supp., C.R.S.1963, 40–5–1, was "the felonious and violent taking of money, goods, or other valuable things from the person of another by force or intimidation." An aggravated robbery thus was a robbery committed with a dangerous weapon and with the intent, if resisted, to kill, maim, or wound the victim or other person. 1967 Perm.Supp., C.R.S. 1963, 40–5–1; *Johnson v. People,* 174 Colo. 75, 482 P.2d 105 (1971).

Colorado has traditionally interpreted its constitutional prohibition against double jeopardy in accord with federal decisions interpreting the similar Fifth Amendment provision, *People v. Roark,* 643 P.2d 756 (Colo.1982), which, *inter alia,* protects an accused against multiple punishments for the same offense. *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). However, because it is the prerogative of the legislative branch to define crimes and prescribe punishment for those crimes, the role of this constitutional guarantee is limited to assuring that the court does not impose punishment which has not been authorized by the legislature. *Albernaz v. United States,* 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981); *Brown v. Ohio,* 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977).

The established test for determining whether two offenses are, in fact, the same offense was set forth in *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932):

> "The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not...."

In 1971, Colorado closely adhered to this test believing it to be constitutionally required. *People v. Lowe,* 660 P.2d 1261 (Colo.1983); *People v. Bugarin,* 181 Colo. 62, 507 P.2d 875 (Colo.1973). The General Assembly is presumed to know the law and, therefore, to know that this test would be closely followed in determining whether separate sentences for offenses would be allowed. *People v. Green,* 734 P.2d 616 (Colo.1987).

Felony murder, as defined by C.R.S.1963, 40–2–3, required only that the murder occur during the perpetration or attempt to perpetrate a robbery. Therefore, it is possible to commit the offense of felony murder without also satisfying the elements of aggravated robbery which includes the elements of robbery but also includes the ad-

ditional elements of a dangerous weapon and the intent, if resisted, to kill, maim, or wound another person. On the other hand, it is obviously possible to commit an aggravated robbery without satisfying all of the elements of felony murder. Therefore, these two offenses are not the same offense under the test set forth in *Blockburger*.

Because the General Assembly adopted this scheme in defining the elements of felony murder, we presume its intent was to allow separate sentences for felony murder and aggravated robbery. Therefore, we find no violation here of the state or federal constitutional provisions prohibiting double jeopardy.

We note that 1971 Perm.Supp., C.R.S. 1963, 18-1-408 expanded the definition of lesser included offenses such that aggravated robbery is now a lesser included offense of felony murder. *See People v. Raymer*, 662 P.2d 1066 (Colo.1983). However, this provision specifically applies only to offenses committed after July 1, 1972, and thus is not applicable to the offenses at issue, which were committed in 1971. *See* § 18-1-103, C.R.S. (1987 Repl.Vol. 7B).

### III.

Defendant's last argument is that he was denied effective assistance of counsel both at trial and on appeal.

When defendant makes a claim of ineffective assistance of counsel in a Crim.P. 35 procedure, the burden rests on him to show that counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *People v. Dillon*, 739 P.2d 919 (Colo.App.1987).

Here, the trial court, after reviewing the entire trial transcript, found that defendant's contention that he was ineffectively represented was unfounded and that his case was fully prepared and well presented at trial. Because the transcript of the trial was not certified to this court on appeal, we presume that the findings and conclusions of the trial court are supported by the evidence. *People v. Morgan*, 199 Colo. 237, 606 P.2d 1296 (1980). Additionally, the court found, and we agree, that, at most, defendant's testimony at the Crim.P. 35(c) hearing indicated some disagreement with his attorney over trial tactics. However, mere disagreement as to trial strategy does not support a claim of ineffective assistance of counsel. *People v. Bossert*, 722 P.2d 998 (Colo.1986).

Finally, it is not necessary for the trial court, or for us, to determine whether defendant was ineffectively represented on his first appeal. Any prejudice which inured to defendant as a result of ineffective representation on appeal has been remedied in this Crim.P. 35(c) proceeding which addresses the issue which defendant complains was not raised on his first appeal.

Accordingly, the order and sentences are affirmed.

TURSI and BABCOCK, JJ., concur.