250 P.3d 1262
The PEOPLE of the State of Colorado, Plaintiff–Appellee,
v.
Jeremy GARDNER, Defendant–Appellant.
No. 09CA0085.
Colorado Court of Appeals, Div. V. March 4, 2010.Rehearing Denied April 22, 1010.
         [250 P.3d 1265] John W. Suthers, Attorney General, Corelle M. Spettigue, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.Jeremy Gardner, Pro Se.Opinion by Judge LICHTENSTEIN.        Defendant, Jeremy Gardner, appeals the district court's denial of his motion for postconviction relief under Crim. P. 35(c), following the entry of guilty pleas. We affirm the district court's order in part, reverse it in part, and remand for proceedings consistent with this opinion.
I. Background        In May and October 2005, the prosecution filed four cases against Gardner alleging theft, forgery, and fraud by check. These charges stemmed from allegations that Gardner overstated or misrepresented the amount of accounts receivable for his company, Cutting Edge Fabrication, to various factoring companies and other entities in order to obtain funding based upon the value of the accounts receivable.        In February 2006, Gardner pleaded guilty to three counts of theft over $15,000, each a class three felony in violation of the relevant version of section 18–4–401(1) and (2)(d). These three counts were derived from two separate cases and alleged theft from two factoring companies.        Subsequent to Gardner's entry of his guilty plea, but before sentencing, Gardner discharged his counsel and proceeded pro se. At sentencing, according to the terms of the plea agreement, the court imposed three consecutive six-year prison terms, ordered restitution to the companies involved, and dismissed the remaining counts and cases.        On December 9, 2008, Gardner filed a motion for postconviction relief pursuant to Crim. P. 35(c), challenging his convictions on various constitutional and jurisdictional grounds.        The district court denied Gardner's motion, adopting the People's arguments that, by pleading guilty, Gardner waived his constitutional challenges to section 18–4–401 and his double jeopardy claims, and that his subject matter jurisdiction claims failed on the merits.        Gardner now appeals.
II. General Standards         The general rule is that a valid guilty plea renders irrelevant all claims that a defendant's constitutional rights have been violated. However, a defendant may collaterally attack his conviction based upon a guilty plea if the postconviction relief sought relates to either (1) the voluntary and intelligent nature of the plea or (2) the power of the court to enter the conviction or impose the sentence, or to the state's power to prosecute in the first place. See United States v. Broce, 488 U.S. 563, 569, 109 S.Ct. 757, 102 L.Ed.2d 927 (1989) (citing Menna v. New York, 423 U.S. 61, 63 n. 2, 96 S.Ct. 241, 46 L.Ed.2d 195 (1975)); Patton v. People, 35 P.3d 124, 132 (Colo.2001). This latter exception is narrowly construed to balance the state's interest in the finality of adjudications achieved through plea bargaining against a defendant's ability to collaterally attack his sentence, and accordingly only applies to         [250 P.3d 1266] those claims which are based on the language of the statute or indictment itself and require no further evidentiary proof. See Broce, 488 U.S. at 575–76, 109 S.Ct. 757; Patton, 35 P.3d at 132–33; see also People v. Owen, 122 P.3d 1006, 1007–08 (Colo.App.2005).        We review the district court's summary denial of a motion for postconviction relief under Crim. P. 35(c) de novo. People v. Trujillo, 169 P.3d 235, 237 (Colo.App.2007).
III. Collateral Attack—Multiplicity of Charges        Gardner contends he did not waive his right to assert that the charges under which he was convicted as a result of his guilty plea were multiplicitous, and therefore violate the state and federal constitutions' proscription of double jeopardy. We agree in part with this contention.        Contrary to the People's assertion, Gardner preserved and validly asserted this issue on appeal.
A. Effect of Guilty Plea on Double Jeopardy Claim         In Patton the supreme court held that “a guilty plea does not waive a valid double jeopardy claim of being punished twice for the same offense.” 35 P.3d at 132 (citing Broce, 488 U.S. 563, 109 S.Ct. 757; Menna, 423 U.S. 61, 96 S.Ct. 241; Blackledge v. Perry, 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974)). However, the double jeopardy inquiry is limited to a consideration of “the structure of the information and guilty plea at the time of the providency hearing,” and the court “cannot inquire into the facts underlying the guilty plea or take into account statements made at the sentencing hearing.” Patton, 35 P.3d at 133 (citing Broce, 488 U.S. at 574–75, 109 S.Ct. 757); see also Broce, 488 U.S. at 575, 109 S.Ct. 757 (“a plea of guilty to a charge does not waive a claim that— judged on its face—the charge is one which the State may not constitutionally prosecute” (quoting Menna, 423 U.S. at 63 n. 2, 96 S.Ct. 241)).         Here, Gardner's double jeopardy claims arise solely from the language contained in the three counts to which he pleaded guilty. He contends these counts facially alleged only one crime of theft, rather than three separate crimes. Accordingly, we conclude Gardner's double jeopardy claim is not waived by his entry of a guilty plea. See Patton, 35 P.3d at 132.
B. Gardner's Double Jeopardy Claims        Gardner, relying on the applicable version of section 18–4–401(4), which designated all instances of theft within a six-month period as a single theft offense, asserts that the three charges under which he was convicted occurred within a single six-month period and therefore are multiplicitous in violation of his right to be free from double jeopardy under both the federal and state constitutions. We agree in part.         The Double Jeopardy Clauses of both the United States and Colorado Constitutions preclude a defendant from being placed twice in jeopardy for the same criminal act.[1] U.S. Const. amend. V; Colo. Const. art. II, § 18; see also Woellhaf v. People, 105 P.3d 209, 214 (Colo.2005). This protection precludes being tried twice for the same offense, as well as being subjected to multiple punishments for the same offense without legislative authorization. See Woellhaf, 105 P.3d at 214 (citing Whalen v. United States, 445 U.S. 684, 688, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980)).         Double jeopardy may be violated in cases involving multiplicity, which “is the charging of multiple counts and the imposition of multiple punishments for the same criminal conduct.” Id. (citing People v. Borghesi, 66 P.3d 93, 98 (Colo.2003), and United States v. Morehead, 959 F.2d 1489, 1505 (10th Cir.1992)).        In cases where multiplicity is based on charges under the same statutory provision, the question becomes whether the legislature intended to create a separate “unit of prosecution” for each charge.         [250 P.3d 1267] United States v. Chipps, 410 F.3d 438, 447 (8th Cir.2005); see also Woellhaf, 105 P.3d at 215.        The unit of prosecution is the manner in which a criminal statute permits a defendant's conduct to be divided into discrete acts for purposes of prosecuting multiple offenses. Once the General Assembly prescribes the unit of prosecution, that prescription determines the scope of protection offered by the Double Jeopardy Clause.
Woellhaf, 105 P.3d at 215 (citations omitted).         In Roberts v. People, 203 P.3d 513, 516 (Colo.2009), the supreme court determined that former section 18–4–401(4)—applicable at the time of Gardner's offenses—reflected the General Assembly's prescription of the unit of prosecution for theft. The relevant version of section 18–4–401(4) stated that        [w]hen a person commits theft twice or more within a period of six months without having been placed in jeopardy for the prior offense or offenses, and the aggregate value of the things involved is five hundred dollars or more but less than fifteen thousand dollars, it is a class 4 felony; however, if the aggregate value of the things involved is fifteen thousand dollars or more, it is a class 3 felony.
Ch. 314, sec. 10, § 18–4–401(4), 1998 Colo. Sess. Laws 1437 (amended in 2007 and 2009). In Roberts, the court stated “this language not only permits, but in fact requires, all thefts committed by the same person within a six-month period ... to be joined and prosecuted as a single felony.” 203 P.3d at 516. Accordingly, the unit of prosecution applicable here treats all separately prosecutable thefts committed within a six-month period as a single theft, unless jeopardy has previously attached regarding one of the thefts. See id.        Here, Gardner was convicted under three separate theft charges, all alleging violations of the same provisions of the relevant version of the theft statute, section 18–4–401(1)(a)–(b), (2)(d). There were two victims involved in the three charges, one victim for the first charge and another victim for the second and third charges.[2] We must now determine whether the three counts to which Gardner pleaded guilty constitute more than one defined unit of prosecution. See Woellhaf, 105 P.3d at 219.         First, in case number 05CR5321 the two charges under which Gardner was convicted and sentenced contained identical language. Both charges stated that Gardner committed theft from Praxis Capital in an amount exceeding $15,000, in violation of “section 18–4–401(1)(a)(b), (2)(d), C.R.S.” Further, both charges stated that the thefts were committed “between and including September 1, 2005, and October 21, 2005.” Judged by the face of the charges, the two offenses are identical, and necessarily occurred within less than a six-month period. Accordingly, under the holding in Roberts and the language of the relevant version of section 18–4–401(4), these two charges constitute        [250 P.3d 1268] a single unit of prosecution. Consequently, we conclude Gardner's multiple convictions and punishments for these counts violated the proscription against double jeopardy.         Gardner was also convicted and sentenced under another count charged in case number 05CR4037. This charge stated that Gardner committed theft from 1st American Factoring in an amount exceeding $15,000, in violation of “section 18–4–401(1)(a)(b), (2)(d), C.R.S.” Further, the charge stated that the theft was committed “between and including March 1, 2004, and April 30, 2005.” Gardner contends that this count is part of the same singular unit of prosecution that encompasses the two charges in case number 05CR5321. We disagree.        Here, the face of the information in case number 05CR4037 recites a time period that, in part, exceeds (by predating) the six-month “unit of prosecution” period encompassed by the two theft counts in case number 05CR5321. Consequently, the count in case number 05CR4037 can be differentiated from the unit of prosecution established in 05CR5321. See Patton, 35 P.3d at 133 (while the Double Jeopardy Clauses prevent conviction and cumulative punishment for greater and lesser included offenses of drug possession and manufacture, as delineated by a single period within which the crimes were committed, a different case would be presented if the counts recited that the period of the possession exceeded the period of manufacture).        Gardner nonetheless relies on the proposition that by accepting a guilty plea, a court must assume that a defendant admits “that the elements of the crime were not complete, and the crime was not committed,” until the last date alleged in the charge. See People v. Myers, 45 P.3d 756, 758 (Colo.App.2001) (evaluating whether a sentencing law change for a sexual assault violated ex post facto principles); see also People v. Flagg, 18 P.3d 792, 794 (Colo.App.2000) (same). However, this assumption does not logically carry over to an aggregate theft offense, as defined in former section 18–4–401(4), which, by its plain language, directed the prosecution to charge “a person [who] commits theft twice or more within a period of six months” in a single information (emphasis added). Because the theft statute permits more than one instance of theft to be charged as a single count, we cannot assume that by pleading guilty Gardner admitted that a theft was not committed until the last date alleged in the charge. Nor can we inquire into the underlying facts of the theft charge to verify or disprove that more than one instance of theft constituted the charge. See Patton, 35 P.3d at 132. Therefore, because the charge in 05CR4037 states a date range encompassing dates prior to the six-month time frame necessary to require merger of all three theft counts and because we cannot assume that an instance of theft did not occur in this period of time, Flagg and Myers are inapposite here.        Accordingly, as judged on the face of the charging documents, the information in 05CR4037 recites a time period that, in part, predates the thefts in 05CR5321 by more than six months, and therefore is not multiplicitous of those counts.        On remand, the court shall merge Gardner's two convictions in 05CR5321, resentencing him to two six year terms, running consecutively.
IV. Gardner's Equal Protection Challenge to Section 18–4–401         Gardner next contends his guilty plea did not waive his equal protection challenge to subsections 18–4–401(2)(d) and (5) of the theft statute. Because we perceive his challenge as an as-applied challenge to the constitutionality of the statute, we disagree.        In People v. Ford, 232 P.3d 260, 263 (Colo.App.2009), a division of this court held that a guilty plea waives an as-applied challenge to the constitutionality of the statute under which the conviction was entered.         “[A]n as-applied challenge alleges that the statute is unconstitutional as to the specific circumstances under which a defendant acted.” Id. at 263; accord Blood v. Qwest Services Corp., 224 P.3d 301, 313 (Colo.App.2009); Sanger v. Dennis, 148 P.3d 404, 411 (Colo.App.2006). In contrast, “[o]utside the First Amendment context, a facial         [250 P.3d 1269] challenge alleges that there are no circumstances to which a statute can be applied constitutionally.” Ford, 232 P.3d at 263; see also United States v. Salerno, 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987) (facial challenge to statute requires challenger to establish that no set of circumstances exists under which the statute would be valid); Danielson v. Dennis, 139 P.3d 688, 691 (Colo.2006) (“a statute is facially unconstitutional only if no conceivable set of circumstances exists under which it may be applied in a permissible manner”).        The relevant version of Colorado's theft statute, section 18–4–401, provided in pertinent part:        (2) Theft is:        (a) A class 3 misdemeanor if the value of the thing involved is less than one hundred dollars;        (b) A class 2 misdemeanor if the value of the thing involved is one hundred dollars or more but less than five hundred dollars;        (c) A class 4 felony if the value of the thing involved is five hundred dollars or more but less than fifteen thousand dollars;        (d) A class 3 felony if the value of the thing involved is fifteen thousand dollars or more.        ....        (5) Theft from the person of another by means other than the use of force, threat, or intimidation is a class 5 felony without regard to the value of the thing taken.        Ch. 80, sec. 1, § 18–4–401(2)(a), (d), 1992 Colo. Sess. Laws 433 (subsection (a) repealed and subsection (d) amended in 2007); Ch. 264, sec. 23, § 18–4–401(2)(b)–(c), 1997 Colo. Sess. Laws 1548 (amended in 2007); § 18–4–401(5), C.R.S.2009.        Gardner's equal protection argument contends that the plain language of subsection (5) allows a less severe penalty to be imposed, as compared to subsection (2)(d), for defendants who commit theft from a person where the item involved has a value in excess of $15,000. He alleges that in this circumstance, the riskier conduct of taking the money from a person results in a class 5 felony conviction, whereas the less egregious conduct of a theft outside the presence of a person would result in a more severe class 3 felony conviction. See Smith v. People, 852 P.2d 420, 421–22 (Colo.1993) (sentencing structures that punish less grievous acts more severely may violate equal protection principles); People v. Suazo, 867 P.2d 161, 164 (Colo.App.1993).        The validity of Gardner's equal protection claim rests on the statutory sentencing scheme's application only in circumstances where the value of the item at issue equals or exceeds a particular dollar amount. See, e.g., § 18–1–401(2)(b)–(c) (applicable version raised the classification of theft from misdemeanor to a class 4 felony where the value of the item equals or exceeds $500). Where the value of the item is less than $500, the General Assembly intended to foreclose the possibility that a defendant who commits theft from a person could be charged with a misdemeanor under subsections (2)(a) and (b), rather than a felony under subsection (5). See People v. Warner, 801 P.2d 1187, 1191 (Colo.1990) (the invasion of the victim's person presents an element of danger absent in other theft offenses, which justifies the greater penalty accorded those who violate subsection (5)).        Because Gardner's constitutional challenge cannot be characterized as a claim in which “there are no circumstances to which [the theft] statute can be applied constitutionally,” Ford, 232 P.3d at 263, it is an as-applied claim and therefore is not a challenge that may be raised after a guilty plea. Id.        Accordingly, we perceive no error in the district court's determination that by entering a guilty plea, Gardner waived his equal protection challenge. See id.
V. Subject Matter Jurisdiction         Challenges to subject matter jurisdiction are not waived when the defendant enters a guilty plea. See Patton, 35 P.3d at 128. Further, because such challenges involve the jurisdiction of the court, they may be raised on appeal even when not raised in the district court. Herr v. People, 198 P.3d 108, 111 (Colo.2008).        [250 P.3d 1270] A. Sufficiency of the Charging Documents         Gardner contends the felony complaints containing the charges to which he pleaded guilty did not invoke the court's subject matter jurisdiction because they failed to state the manner in which the thefts were committed and the amount of money stolen. We disagree.         A charging document generally is sufficient to invoke a court's subject matter jurisdiction when it sets forth the alleged criminal act in the words of the relevant statute. People v. Williams, 984 P.2d 56, 60 (Colo.1999). The theft statute at issue here expressly states: “[I]t shall be sufficient to allege that, on or about a day certain, the defendant committed the crime of theft by unlawfully taking a thing or things of value of a person or persons named in the indictment or information. The prosecuting attorney shall at the request of the defendant provide a bill of particulars.” § 18–4–401(6), C.R.S.2009.        Here, all three counts of theft in the felony complaints tracked the language of section 18–4–401(1) and comported with the pleading requirements of subsection (6). Accordingly, the felony counts invoked the subject matter jurisdiction of the court. See People v. Carlson, 72 P.3d 411, 415 (Colo.App.2003) (indictment tracking the language of section 18–4–401 is substantively sufficient).        We are not persuaded by Gardner's contention that People v. Tucker, 631 P.2d 162 (Colo.1981), dictates a contrary result. In Tucker, the supreme court addressed the sufficiency of an indictment charging embezzlement under a former version of section 18–8–407, and is therefore inapposite. See People v. Madison, 176 P.3d 793, 804 (Colo.App.2007) (restricting Tucker to only those statutes which do not describe the acts constituting the offense).        Gardner also contends the court never obtained subject matter jurisdiction over his felony case because the charges were brought by felony complaint, rather than by indictment as required by the Colorado Constitution. We again disagree.         The Colorado Constitution does not guarantee a grand jury indictment for a felony charge. See Losavio v. Robb, 195 Colo. 533, 536, 579 P.2d 1152, 1154 (1978). Although, article II, section 8 of the Colorado Constitution states that “[u]ntil otherwise provided by law, no person shall, for a felony, be proceeded against criminally otherwise than by indictment,” this clause serves only to “direct that criminal proceedings must be initiated by indictment and to authorize the legislature to provide alternative methods of proceeding.” Falgout v. People, 170 Colo. 32, 39, 459 P.2d 572, 576 (1969). The General Assembly enacted section 16–5–101, C.R.S.2009, to provide alternative methods of initiating a criminal proceeding. People v. Rodriguez, 914 P.2d 230, 256 n. 27 (Colo.1996). As enacted in 1972, section 16–5–101 specifically allows for “a criminal action” to be commenced “[b]y the filing of a felony complaint in the county court.” § 16–5–101(1)(c), C.R.S.2009. Accordingly, the subject matter jurisdiction of the county court was properly invoked here when criminal proceedings were initiated against Gardner by the filing of felony complaints. See id.
B. Power of the County Court to Issue Bindover Orders        Gardner next contends that the district court never acquired subject matter jurisdiction over the felony charges against him because the county court's orders to bind the cases over were void as unconstitutional actions by the county court. We disagree.         In support of his argument, Gardner relies on article VI, section 17 of the Colorado Constitution, which states that “[c]ounty courts shall have such civil, criminal, and appellate jurisdiction as may be provided by law, provided such courts shall not have jurisdiction of felonies.” Gardner contends that this provision renders the bindover order issued by the Denver County Court in his case void, because the charges involved were class three felonies under the theft statute. However, Gardner's argument overlooks section 13–6–106(1)(b), C.R.S.2009, granting county courts concurrent original jurisdiction with district courts regarding “the issuance of bindover orders.” See People v. Guenther, 740 P.2d 971, 979 (Colo.1987)         [250 P.3d 1271] (citing section 13–6–106(1)(b) for the proposition that county court has limited jurisdiction to bind the case over to the district court for trial). Accordingly, because the General Assembly provided the county courts with the power to bind felony cases over to the district courts, the Denver County Court did not exceed its jurisdictional limits.
C. Jurisdiction of District Court Regarding Location of Theft         Gardner also contends that the district court lacked subject matter jurisdiction over his cases because the People failed to establish that the thefts were committed “wholly or partially” within Colorado, as required by section 18–1–201, C.R.S.2009. We disagree.         Section 18–1–201 limits the jurisdiction of Colorado courts to those crimes committed wholly or partially within the territorial boundaries of the state. See People v. Burgess, 946 P.2d 565, 569 (Colo.App.1997). When a defendant enters a guilty plea to a charge he or she admits all material facts alleged in that charge, see Patton, 35 P.3d at 128, including those facts that serve as factual predicates to subject matter jurisdiction. United States v. Brown, 164 F.3d 518, 522 (10th Cir.1998) (collecting cases).        Here, Gardner entered guilty pleas to charges that included the language “at the City and County of Denver, State of Colorado,” in their description of the alleged crimes committed. Gardner also signed an advisement of elements of the crime for which he was charged, which included similar language as an element of the crime of theft.        By pleading guilty, Gardner waived the right to have these facts proved by the state, and he admitted that the substantive crimes of theft occurred “at the City and County of Denver, State of Colorado.” See Brown, 164 F.3d at 522 (admission in guilty plea establishing factual basis for court's jurisdiction). Accordingly, Gardner's guilty pleas established the factual basis for the subject matter jurisdiction of the district court, and he cannot argue otherwise now.
VI. Power of Court to Sentence Gardner         Gardner next contends that “the classification of theft of a thing having a value of $15,000 or more as a felony is unconstitutional because the court did not have authority to sentence Gardner to ‘the penitentiary’ on June 23, 2006.” We construe Gardner's argument as a nonwaivable collateral attack on the validity of his sentence for a class three felony. See Patton, 35 P.3d at 128 (collateral attack on court's power to sentence not waived).        Gardner contends that article XVIII, section 4 of the Colorado Constitution defines a felony as an offense that may only be punished by death or imprisonment in the penitentiary, and that the legislature in 1979 divested the district court of the power to sentence a defendant to a particular facility, such as “the penitentiary.” Accordingly, he argues his convictions were not felonies and therefore the district court lacked the power to sentence him under a class three felony theft conviction. We disagree.        Article XVIII, section 4 of the Colorado Constitution states that “[t]he term felony, wherever it may occur in this constitution, or the laws of the state, shall be construed to mean any criminal offense punishable by death or imprisonment in the penitentiary, and none other.” This provision was addressed by the supreme court in People v. Godding, 55 Colo. 579, 136 P. 1011 (1913), where the court rejected the argument that this constitutional provision limited the mode of punishment for felonies to “death or imprisonment in the penitentiary.” Id. at 587, 136 P. at 1014. The court held that the term “and none other” referred to the offenses that were encompassed within the term “felony,” not the possible modes of punishment. Id. Accordingly, section XVIII, article 4 “means that every offense which may be punished by death or imprisonment in the state penitentiary is a felony, even though, on conviction, in the discretion of the court, in a proper case, a lighter penalty might be inflicted.” Id. at 588, 136 P. at 1014.        Accordingly, because article XVIII, section 4 does not mandate sentencing to either death or imprisonment in the penitentiary for every felony, Gardner's argument fails. The         [250 P.3d 1272] district court had the power to sentence Gardner to the custody of the department of corrections for a class three felony theft under the applicable version of section 18–4–401(2)(d), and appropriately exercised such power.        The district court's order is reversed as to Gardner's claim of multiplicitous charges in 05CR5321, the order is affirmed in all other respects, and the case is remanded for proceedings consistent with this opinion.
--------
Notes:        1. In cases such as this, where the issue is the determination of whether the Double Jeopardy Clauses bar multiple punishments, the federal and state constitutions provide coextensive coverage. People v. Leske, 957 P.2d 1030, 1035 n. 6 (Colo.1998).        2. Count one in case number 05CR4037 read as follows:         That between and including March 1, 2004, and April 30, 2005, at the City and County of Denver, State of Colorado, JEREMY GARDNER unlawfully, feloniously, and knowingly obtained or exercised control over a thing of value, namely: MONEY of 1st AMERICAN FACTORING, aka BLUE BEAR FUNDING, with the value of fifteen thousand dollars or more, without authorization, or by threat or deception, and intended to deprive 1st AMERICAN FACTORING, aka BLUE BEAR FUNDING, permanently of its use or benefit, and knowingly used, concealed, or abandoned the thing of value in such manner as to permanently deprive 1st AMERICAN FACTORING, aka BLUE BEAR FUNDING, of its use or benefit; in violation of section 18–4–401(1)(a)(b), (2)(d), C.R.S.         Counts one and three in case number 05CR5321 were identical and read as follows:         That between and including September 1, 2005, and October 21, 2005, at the City and County of Denver, State of Colorado, JEREMY GLEN GARDNER unlawfully, feloniously, and knowingly obtained or exercised control over a thing of value, namely MONEY of PRAXIS CAPITAL LP, with the value of fifteen thousand dollars or more, without authorization, or by threat or deception, and intended to deprive PRAXIS CAPITAL LP, permanently of its use or benefit, and knowingly used, concealed, or abandoned the thing of value in such manner as to permanently deprive PRAXIS CAPITAL LP, of its use or benefit; in violation of section 18–4–401(1)(a)(b), (2)(d), C.R.S.